UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| BETH STALEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:15-cv-178-TAB-RLY |
| | ) |
| CAROLYN COLVIN, Acting Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Beth Staley appeals the Administrative Law Judge's denial of her application for Social Security benefits. Staley raises four issues on appeal: (1) whether the ALJ failed to consider all of Staley's conditions at step two, (2) whether the ALJ failed to consider all of Staley's conditions at step three, (3) whether the Residual Functional Capacity is supported by substantial evidence, and (4) whether the hypothetical to the Vocational Expert failed to include all of Staley's limitations. For the reasons set forth below, Staley's brief in support of remand [Filing No. 20] is granted.

### I.   Background

Staley alleges she became disabled in September 2008 with diabetes mellitus, fibromyalgia, Mixed Connective Tissue Disease, carpal tunnel syndrome, kidney disease, high blood pressure, neuropathy, left eye blindness, celiac disease, thyroid disease, low vitamin D, high cholesterol, and hypertension. Staley filed a claim for disability insurance, which was denied initially and on reconsideration. Staley requested a hearing and testified before an ALJ. The ALJ found that Staley was not disabled and denied her application. [Filing No. 15-2, at ECF p. 14-25.]

At step one, the ALJ found that Staley had no substantial gainful activity. At step two, the ALJ found that Staley has five severe impairments: diabetes mellitus, fibromyalgia, carpal tunnel syndrome, kidney disease, and left eye blindness. [Filing No. 15-2, at ECF p. 16.] The ALJ also found that Staley has six non-severe impairments: celiac disease, thyroid disease, low vitamin D, high cholesterol, and hypertension. [Filing No. 15-2, at ECF p. 16-17.] At step three, the ALJ determined that none of Staley's impairments met or equaled a relevant listing. [Filing No. 15-2, at ECF p. 17-18.] At step four, the ALJ determined that Staley has the RFC to perform "less than a full range of sedentary work" and imposed limitations, specifically:

> She can frequently handle, finger or feel with the right upper extremity; occasionally climb ramps, stairs; no climbing ladders or scaffolding; occasional stooping, kneeling, crouching, crawling; reading ordinary newspaper and book print; take care for objects approaching from the left/rear; no unprotected heights, operating a commercial motor vehicle; occasionally be around moving mechanical parts; no extreme cold; occasional vibration.

[Filing No. 15-2, at ECF p. 19.] Based on the RFC and testimony from the VE, the ALJ found that Staley could not perform past work. At step five, the ALJ found that Staley was capable of working as a document preparer, audit clerk, or information clerk. Accordingly, the ALJ concluded Staley was not disabled. The ALJ's decision became final when the Appeals Council denied Staley's request for review. This appeal followed.

## II.    Standard of Review

The Court must uphold the ALJ's decision if substantial evidence supports her findings. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). "The substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120 (7th Cir. 2014). The ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.

2

*Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Moore, 743 F.3d at 1123*. The ALJ, however, need not mention every piece of evidence, so long as she builds a logical bridge from the evidence to his conclusion. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). "An ALJ must only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). A reviewing court does not reweigh evidence, and gives deference to the ALJ's finding. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). If the court finds an error, but a reasonable ALJ would come to the same conclusion on remand, that error is harmless. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

### III. Discussion

#### A. The ALJ failed to properly consider Staley's obesity and MCTD at step two

Staley argues that all of her conditions were not considered at step two. Staley argues the ALJ failed to discuss her obesity, MCTD, and fibromyalgia. The Commissioner contends that the ALJ was not obligated to assess Staley's obesity and that the ALJ's failure to discuss Staley's MTCD and fibromyalgia was harmless errors. The Court agrees with Staley on her first two arguments, concluding the ALJ erred at step two.

Social Security Ruling 02-1p requires an ALJ to consider the effects of obesity on a claimant's other impairments. Absent contradiction in the record, a BMI above 30 indicates a claimant is obese. *Id.* If a claimant is obviously obese, an ALJ must consider obesity and its effects, even if it is not asserted as an impairment. *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) (citing SSR 02-1p). For example, if a claimant identifies a connection between her impairments and obesity, or if the record contains a clear connection, the ALJ must consider

the effects.  See *Cody v. Astrue,* No. 09-3060, 2010 WL 3951987, at *8 (C.D. Ill. Oct. 6, 2010), *amended in part,* No. 09-3060, 2010 WL 4876734 (C.D. Ill. Nov. 17, 2010) ("The record clearly made Cody's obesity an issue.").  However, the ALJ's failure to consider obesity is harmless error if a claimant does not link her obesity directly to her other impairments, and the ALJ adopts the limitations suggested by doctors who are aware of the claimant's obesity.  *Prochaska*, 454 F.3d at 736; *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

The record clearly demonstrates that Staley was obese, at least from October 2013 to January 2015.  According to Dr. Ramesh Kalari's records, Staley's BMI was over 30 on October 29, 2014, July 23, 2014, April 23, 2014, and January 15, 2015.  [Filing No. 15-9, at ECF pp. 95, 99, 103, 106.]  According to Dr. German's records, Staley's BMI was over 30 on October 22, 2013, July 10, 2014, and February 11, 2014.  [Filing No. 15-9, at ECF pp. 120, 124, 129.]  Nurse practitioner Joedie Arnold's records show Staley's BMI was over 30 on September 9, 2014, June 3, 2014, and April 15, 2014.  [Filing No. 15-10, at ECF pp. 4, 7, 10.]  Also, in Dr. Cynthia Bickford's records, Staley's BMI was above 30 on May 21, 2014, February 21, 2014, January 1, 2014, December 10, 2013, and November 6, 2013.  [Filing No. 15-11, at ECF p. 4, 8, 12, 15, 18.]  Staley's medical records also establish a link between her symptoms and her obesity.  For example, Dr. German noted that Staley's obesity prevented her from prescribing certain medications for Staley's fibromyalgia because of "the potential of increasing her weight." [Filing No. 15-9, at ECF p. 121.]  Despite this evidence, the ALJ failed to consider how Staley's obesity affected her other impairments.  The ALJ's failure to do so was error.

The error is not harmless because the ALJ did not rely on the medical opinions documenting Staley's obesity when assessing her limitations in the RFC.[1] [Filing No. 15-2, at ECF p. 21.] The ALJ relied on Drs. Fish and Corcoran, who did not account for Staley's obesity because she was not obese when they examined her. When Dr. Fish examined Staley, her BMI was 27.8, as it was when Dr. Corcoran examined her. [Filing No. 15-3, at ECF p. 11; Filing No. 15-9, at ECF p. 57.] Staley became obese in October 2013, but these doctors examined her in April and July 2013. Unlike the ALJ, neither Drs. Fish nor Corcoran had access to medical records that indicated Staley was obese. By relying on medical records that do not evaluate Staley's obesity, the ALJ failed to consider its effects on her limitations. *See Arnett v. Astrue, 676 F.3d 586, 593 (7th Cir. 2012)* ("Several other physicians specifically discussed Arnett's obesity; the ALJ, however, either discounted the opinions of these physicians or never mentioned them. On such a record, we cannot find harmless error."). Thus, the ALJ's error was not harmless.

Additionally, the ALJ failed to consider Staley's MCTD. At step two, the ALJ must determine whether the claimant has any medically determinable impairments based on objective medical evidence. 42 U.S.C. § 423(d)(1)(A). The Commissioner concedes that the ALJ did not discuss MCTD, but argues that it was harmless because Staley does not put forth evidence that she requires additional restrictions in the RFC. This argument is not persuasive. Whether Staley needs RFC restrictions is not the question at step two. At step two, the Court asks whether the ALJ analyzed whether Staley's MCTD is medically determinable based on the evidence.

---

[1] Dr. German is Staley's treating physician, who was afforded little weight by the ALJ. The RFC section discusses the ALJ's error in weighing Dr. German's opinion.

5

The ALJ mentioned Staley's MCTD only once in her opinion, noting that "[s]he has fibromyalgia and [MCTD] and thyroid disease." [Filing No. 15-2, at ECF p. 20.] The ALJ failed to consider the medical records documenting Staley's treatment for MCTD and Staley's testimony that her MCTD impacts her health and ability to work. [Filing No. 15-7, at ECF pp. 2-46; Filing No. 15-9, at ECF pp. 48-54; Filing No. 15-9, at ECF pp. 83-87; Filing No. 15-9, at ECF pp. 117-135; Filing No. 15-2, at ECF pp. 42-58.] The ALJ should have discussed Staley's testimony and medical records, and the ALJ should have then concluded whether her MCTD is a severe impairment. The ALJ's failure to consider Staley's MCTD at step two was error.

The Commissioner argues this error is harmless because Staley's MCTD improved with medication and the fibromyalgia restrictions address the MCTD. However, the ALJ did not make these findings. Without reweighing the evidence, the Court is unable to conclude that the ALJ will reach the findings suggested by the Commissioner. Generally, remand is warranted where the ALJ fails to consider evidence of an impairment at step two because it severely impacts the ALJ's opinion. *Ridinger v. Astrue*, 589 F. Supp. 2d 995, 1005 (N.D. Ill. 2008). Whether the ALJ finds an impairment is severe affects whether she makes a determination at step three and whether limitations are included in the RFC at step four. *Id.* (citing *Unger v. Barnhart,* 507 F. Supp. 2d 929, 939 n.3 (N.D. Ill. 2007)). The ALJ failed to address the evidence of record supporting the possibility of MCTD as a severe impairment. The Commissioner cannot rely upon harmless error to cure this potentially far-reaching defect. Thus, remand is appropriate to correct the error.

However, the ALJ's analysis of Staley's fibromyalgia at step two was not erroneous. The ALJ determined that Staley's fibromyalgia was a severe impairment "for the sake of this decision," and included relevant limitations in Staley's RFC. [Filing No. 15-2, at ECF p. 21.]

6

Staley argues this conflicts with the ALJ's finding that the fibromyalgia was not reliably diagnosed. The Court disagrees.

The ALJ described the medical evidence in her analysis of Staley's fibromyalgia. The ALJ found fibromyalgia is a severe impairment because Staley has a diagnosis, the evidence shows 18 trigger points and a positive Antinuclear Antibodies test, and Staley testified that she experienced pain everywhere. [Filing No. 15-2, at ECF p. 21.] However, the ALJ noted that Staley was not treated by a rheumatologist and that the record did not contain an exam that established her fibromyalgia according to The American College of Rheumatology protocol. [Filing No. 15-2, at ECF p. 21.] The ALJ determined that fibromyalgia is one of Staley's severe impairments and gave a logical explanation, which included reasons for her skepticism. The ALJ's analysis of Staley's fibromyalgia is supported by the record. Thus, the Court finds no error. Even if this were error, the ALJ found fibromyalgia is a severe impairment, and it is unclear how remand would affect this aspect of the ALJ's decision.

In sum, the ALJ erred at step two by failing to consider whether Staley's obesity and MCTD are severe impairments. On remand, the ALJ must analyze the medical evidence to determine whether these impairments are severe. As Staley points out, the ALJ may find these impairments are severe in combination because the policy interpretation of SSR 02-1p indicates that diseases such as MCTD are affected by obesity. Also, the Court notes the probability that reconsideration of these impairments at step two will affect steps three and four.

### B. The ALJ failed to properly consider Staley's MCTD at step three

Moving on to step three, Staley argues that the ALJ failed to consider her MCTD against listing 14.06 for undifferentiated and mixed connective tissue disease, failed to properly consider her kidney function against listing 6.05 for chronic kidney disease, and failed to obtain an

updated medical opinion. The Commissioner argues that failing to discuss the MCTD listing was harmless error, Staley's kidney function was sufficiently analyzed against the listing, and the ALJ was not obligated to obtain an updated medical opinion. The Court agrees with Staley about the MCTD listing, but finds no other step three errors.

At step three, the ALJ should mention the relevant listing and perform more than a perfunctory analysis. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Failure to evaluate the evidence that potentially supports a claim of disability "does not provide much assurance" that the ALJ adequately considered the case. *Id.* However, failure to mention a listing is not automatic ground for reversal. *Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004). The claimant has the burden of showing her impairment meets the listing. *Ribaudo*, 458 F.3d at 583.

The ALJ did not mention the listing for MCTD because, as just discussed, the ALJ failed to recognize Staley's MCTD at step two. Accordingly, to determine whether this causes a step three error, the Court looks at whether Staley met her evidentiary burden. This listing for MCTD requires (1) involvement of two or more organs or body systems, with one or more at a severe medical level, and the presence of at least two constitutional symptoms (severe fatigue, fever, malaise, or involuntary weight loss), or (2) repeated manifestations of MCTD, at least two constitutional symptoms (severe fatigue, fever, malaise, or involuntary weight loss), and one of the following at a marked level: "limitation of activities of daily living, limitation in maintaining social functioning or limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 14.06 (A)-(B).

Staley points to enough evidence of MCTD to meet her burden. Dr. German's medical records contain a diagnosis of MCTD and report that Staley was regularly fatigued, had trouble completing daily tasks, was generally sore, and had an assortment of conditions like inflammatory arthralgia. [Filing No. 15-7, at ECF pp. 2-46; Filing No. 15-9, at ECF pp. 48-54; Filing No. 15-9, at ECF pp. 83-87; Filing No. 15-9, at ECF pp. 117-135.] Staley also testified to her manifestations of MCTD, including severe fatigue and malaise. [Filing No. 15-2, at ECF p. 30-58.] She testified her daily activities are limited and she suffers loss of concentration from "brain fog." [Filing No. 15-2, at ECF p. 57-58.] With this evidence, Staley shows that had the ALJ found her MCTD was severe at step two, the ALJ would have had enough evidence to analyze her MCTD under the listing.

However, the same is not true for Staley's kidney disease. Staley takes issue with the ALJ's finding that her peripheral neuropathy does not reach the required level of severity to meet the kidney disease listing. [Filing No. 15-2, at ECF p. 17-18.] The ALJ discussed a June 2010 EMG, which showed diffuse peripheral polyneuropathy, and later discussed a February 2013 EMG, which revealed no evidence of generalized peripheral neuropathy. [Filing No. 15-2, at ECF p. 17, 21.] The ALJ also discussed an October 2012 examination that found "no obvious sensory or motor deficits," a March 2012 examination that was "negative for neuropathy in her feet or other issues," a April 2013 examination that found "no gross sensory deficits or weakness," and a September 2014 monofilament test that was "normal at 10/10 sites." [Filing No. 15-2, at ECF p. 18.]

Staley argues that despite this evidence supporting the ALJ's finding, the ALJ should have concluded her peripheral neuropathy is sufficient to meet the listing. In particular, Staley points out that Dr. Bickford diagnosed neuropathy and prescribed medication, Dr. German noted

9

neuropathy as a sign or symptom, and doctors at Bloomington Kidney and Hypertension Specialists noted neuropathy during a consultation. However, Dr. Bickford and the Bloomington specialists did not make any abnormal neurological findings. [Filing No. 15-8, at ECF pp. 135, 139-40, 177, 184; Filing No. 15-9, at ECF p. 18.] Also, Dr. German did not comment on the duration of Staley's neuropathy. [Filing No. 15-9, at ECF p. 83.] As the Commissioner points out, the regulations require peripheral neuropathy to "have lasted or be expected to last for a continuous period of at least 12 months." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 6.00(C)(4). There is no evidence that Staley's neuropathy lasted or was expected to last this long. The ALJ discussed and analyzed the evidence related to Staley's kidney disease. This analysis supports the ALJ's finding that Staley's kidney disease does not meet the listing. Thus, the Court finds no error in this regard.

Furthermore, the ALJ was not required to obtain an updated medical report from the agency physicians. Staley argues that an updated report was required because the ALJ was aware that the agency physicians did not review newer medical records. However, Staley does not demonstrate how the new records could have changed the agency physicians' opinions. SSR 96-9p only requires the ALJ to obtain an updated agency medical opinion if she believes new medical evidence will change the agency physicians' opinion about a listing. The ALJ acknowledged that the state agency physicians "did not have the benefit of the most recent medical source statements, current medical records, or the hearing testimony," but found that the new medical records essentially support the same conclusion. [Filing No. 15-2, at ECF p. 22.] The ALJ explained that she did not believe the new medical evidence would substantively change the state agency physicians' opinions that Staley's impairments do not meet the relevant listings. *Id.* This is not, as Staley suggests, an attempt by the ALJ to play doctor. This is an

explanation showing that the ALJ considered whether an updated report was necessary. The ALJ concluded it was not, and the Court finds no error with this conclusion.

### C. The RFC is not supported by substantial evidence

Staley argues that the RFC is not supported by substantial evidence because the ALJ violated SSR 96-8p, improperly weighed Dr. German and nurse practitioner Kathy George's opinion, and erroneously found that Staley was not credible. The Commissioner disputes this. As explained below, the Court agrees with Staley that Dr. German's opinion was not properly weighed, resulting in an RFC that is not supported by the record, though Staley's remaining arguments are unavailing.

First, the Court finds that the ALJ's discussion of Staley's RFC meets the requirements of SSR 96-8p, calling for a function-by-function analysis of work-related abilities. Staley argues that the ALJ violated this ruling by failing to discuss sitting, standing, walking, lifting, and carrying. However, "SSR 96-8p does not mandate a function-by-function articulation." *Lewis v. Astrue*, 518 F. Supp. 2d 1031, 1043 (N.D. Ill. 2007). In fact, SR 96-8p only requires the ALJ to "consider, not articulate" Staley's abilities. *Id.* The ALJ only had to discuss a function if she found it compromised. *Id.* The ALJ discussed the effects of Staley's impairments on her ability to work and determined that Staley has the RFC to "perform less than the full range of sedentary work." [Filing No. 15-2, at ECF p. 19.] The ALJ also found manipulative, postural, visual, and environmental limitations. *Id.* Although the ALJ did not specifically limit Staley's standing, walking, sitting, lifting, or carrying, she did not have to. Limiting Staley to sedentary work shows that the ALJ considered Staley's ability to perform those work-related functions. Therefore, the ALJ met the requirements of SSR 96-8p.

Nevertheless, the ALJ erroneously weighed Dr. German's opinion. A treating physician's opinion is entitled to controlling weight as long as it is well supported by objective medical evidence and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If the ALJ determines that a treating doctor's opinion is not entitled to controlling weight, she must evaluate it and determine what weight to give it according to the factors set forth in § 404.1527(d).

The ALJ gave several reasons for assigning Dr. German's opinion little weight. For example, the ALJ explained that Dr. German's report was based on self-reporting and lacked an opinion about Staley's functional abilities. [Filing No. 15-2, at ECF p. 22.] However, the ALJ focused on Dr. German's fibromyalgia findings and, as discussed with the step two error, ignored the MCTD findings. This is a significant portion of Dr. German's opinion and it contains objective medical evidence. For example, Dr. German's medical records contain a diagnosis of MCTD. [Filing No. 15-7, at ECF p. 7-8.] Additionally, Dr. German regularly treated Plaintiff for over two years, performing examinations at each visit. Dr. German's opinions documented abnormalities in Staley's shoulders, hands, feet, and trigger points. [Filing No. 15-7, at ECF p. 9-22.] Dr. German's medical records include notes that Staley was fatigued, complained of pain, and had related conditions, like inflammatory arthralgia. [Filing No. 15-7, at ECF p. 7-8.] As Staley points out, Dr. German's opinion is also consistent with diagnostic and laboratory testing, including EMGs and blood work. [Filing No. 15-7, at ECF p. 37-43.] Thus, despite providing a written analysis, the ALJ's conclusion is not supported by the full record of Dr. German's opinion. This is error. On remand, the ALJ must reconsider Dr. German's opinion in full, and in light of the § 404.1527 factors.

On the other hand, the ALJ's weight assignment for the opinion of Ms. George, a nurse practitioner, was not erroneous. Staley argues that the ALJ failed to analyze certain factors when weighting Ms. George's opinion. However, Ms. George is a nontreating source, who is not entitled to controlling weight, or analyzed under the § 404.1527 factors. *Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009). When weighing George's opinion, the ALJ was only required to examine whether it is supported and explain whether it is consistent with the record. *Id.* The ALJ assigned little weight to George's medical opinion because, like other opinions in the record, it was based on Staley's self-reports. [Filing No. 15-2, at ECF p. 22.] With this explanation, the ALJ met the requirement for a nontreating source. The ALJ compared it to the record and found it was not consistent. Thus, the ALJ's finding that George's opinion should be given little weight will not be overturned.

Finally, the ALJ did not err when finding Staley was not credible. A reviewing court must give the ALJ's credibility determination deference unless the finding is patently wrong. *Pepper v. Colvin*, 712 F.3d 351, 267 (7th Cir. 2013). An ALJ's credibility determination is patently wrong if it is unreasonable or unsupported. *Prochaska*, 454 F.3d at 738. Credibility is assessed in the context of all the reasons provided. *See Powers v. Apfel*, 207 F.3d 431, 435-36 (7th Cir. 2000) ("the hearing officer's assessment of her mildly inconsistent testimony combined with the other evidence discussed here, defeats this strict standard for reversal").

The ALJ's analysis of Staley's credibility is not patently wrong. The ALJ found that Staley is not fully credible because her "allegations concerning the frequency and severity of her symptoms and limitations are not consistent with the objective medical evidence and other evidence of record." [Filing No. 15-2, at ECF p. 23.] The ALJ found only some of Staley's allegations are credible, contributing to the ALJ's RFC determination to limit Staley to sedentary

work. *Id.* Staley takes issue with several specific reasons the ALJ provided for her credibility determination. As explained below, the Court is unconvinced that the ALJ's reasons are patently wrong.

Staley first argues that the ALJ never cited or referenced medical records inconsistent with her statements. However, the ALJ discussed inconsistencies and cited to the record throughout her opinion. For example, the ALJ pointed to a lack of swelling in examinations as evidence inconsistent with Staley's allegations of swelling in her feet. [Filing No. 15-2, at ECF p. 20.] The ALJ also noted that despite Staley's allegations of consistent pain, several examinations reported no muscle aches, joint pain, or localized stiffness. [Filing No. 15-2, at ECF p. 21-22.] Staley's first argument therefore fails.

Second, Staley argues that the ALJ should have found her daily activities are consistent with her alleged limitations. The ALJ found that some of Staley's activities contradicted her allegations that she could not work. For example, the ALJ noted that Staley went to church, taught Sunday school, babysat her granddaughter, and went to the Dollar Store. [Filing No. 15-2, at ECF p. 23.] Staley contends this does not mean that she can tolerate an eight-hour work day. However, the ALJ's finding that Staley's ability to engage in these activities is consistent with her ability to work is reasonable. The ALJ's finding is thus given deference, and remand is not appropriate.

Third, Staley disagrees with the ALJ's assessment of her work history. The ALJ found that Staley worked after her alleged onset date, but the work was not substantial gainful activity. [Filing No. 15-2, at ECF p. 16.] Importantly, the ALJ did not find this demonstrated Staley could return to full-time work. Rather, the ALJ found this demonstrated "she was functional for part of the period at issue." [Filing No. 15-2, at ECF p. 23.] Staley argues this is an improper

characterization. However, her argument is undercut by the fact that Staley held part time work for nearly a year after the alleged onset date. The ALJ's characterization of Staley during this time period as "functional" is not unreasonable.

Fourth, the ALJ found that Staley was not always compliant with her prescribed treatment. [Filing No. 15-2, at ECF p. 23.] The ALJ noted that the medical opinions show her compliance with medication is poor or fair, and describe her as noncompliant. [Filing No. 15-2, at ECF pp. 21, 23.] The ALJ explained that Staley denied it was due to financial difficulties. *Id*. The Commissioner concedes that the ALJ misstated that Staley has not received any treatment other than pain medication, but the Court finds that doing so was harmless. Staley had surgery for her carpal tunnel syndrome, which resolved her related symptoms. [Filing No. 15-2, at ECF p. 21.] Not considering Staley's compliance with treatment for carpel tunnel was thus harmless. Overall, the ALJ's conclusion about Staley's compliance with treatment is therefore reasonable.

Finally, the ALJ found that Staley's naps are a personal choice rather than a medical restriction. [Filing No. 15-2, at ECF p. 23.] The ALJ noted Staley testified drowsiness is not a medication side effect. *Id*. Staley contends that the ALJ should have considered the possibility that her naps are needed from a combined effect of her impairments, but she does not point to evidence that supports this contention or explain how the ALJ's conclusion is unreasonable.[2] As such, the Court finds the ALJ's opinion is reasonable.

In sum, the RFC is not supported by substantial evidence because the ALJ improperly weighed Dr. German's opinion. However, the ALJ did not violate SSR 96-8p, discounting Kathy George's opinion was not erroneous, and the ALJ's reasons for finding that Staley is not

---

[2] A complete assessment of Staley's MCTD could support her alleged need to take a daily nap. On remand, it remains up to the ALJ to decide whether Staley's need for naps is credible.

credible also stand. On remand, the ALJ must reconsider Dr. German's opinion and weigh it according to the regulatory factors.

### D. Staley does not show error with the ALJ's hypothetical

Staley argues the ALJ's hypothetical question to the VE did not incorporate all of her limitations. Hypothetical questions must provide a "complete picture of the claimant's residual functional capacity." *Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014). The Commissioner concedes that two aspects of the hypothetical to the VE did not match the ALJ's RFC finding. However, the Commissioner argues a more specific hypothetical would not change the outcome of the case. The Court agrees.

First, the parties agree that visual limitations for objects coming from the rear was not given to the VE. The RFC limited Staley to "take care for objects approaching from the left/rear," [Filing No. 15-2, at ECF p. 19], but the hypothetical only limited her to "objects approaching from her left side." [Filing No. 15-2, at ECF p. 64.] Visual limitations, however, do not affect the jobs the VE listed. According to the Dictionary of Occupational Titles, document preparers, audit clerks, and information clerks do not have field of vision, depth perception, or far acuity requirements. *Dictionary of Occupational Titles*, 249.587-018, 1991 WL 672349 (4th ed. 1991); 219.587-010, 1991 WL 671989; 237.367-046, 1991 WL 672194. Without visual requirements, the jobs listed by the VE do not prevent Staley from taking care for objects approaching from the rear. Thus, failing to include visual limitations was harmless.

Second, the parties agree that the ALJ phrased "sedentary work" differently for the VE. The RFC was for "less than a full range of sedentary work," [Filing No. 15-2, at ECF p. 19], which does not match the hypothetical for "the sedentary level." [Filing No. 15-2, at ECF p. 64.] However, the hypothetical enumerated the same postural, manipulative, and environmental

16

limitations. The limits included only occasionally climbing ramps and stairs, no climbing of ladders or scaffolding, only occasional stooping, kneeling, crouching, or crawling, no unprotected heights, only occasionally being around moving mechanical parts, no extreme cold, and only occasional exposure to vibration. [Filing No. 15-2, at ECF p. 19.] Neither Staley nor the Commissioner explain how the language in the RFC might create exertional limitations other than what was outlined in the hypothetical. As such, if failing to match the sedentary work phrasing was error, it was harmless.

      The Court notes that hypothetical questions do not need to include every physical limitation if the VE has an opportunity to learn of the limitations. *Murphy*, 759 F.3d at 820. In this case, the VE reviewed the file and listened to the testimony. [Filing No. 15-2, at ECF p. 60.] The VE was present when the ALJ questioned Staley about her left eye blindness. [Filing No. 15-2, at ECF p. 40.] Although the RFC and the hypothetical are not identical, the VE would not likely return different findings if they were identical. The Court is unconvinced that this issue supports remand. Having found no reversible error in the hypothetical to the VE, the Court upholds the ALJ's findings that are based on the VE's testimony.

## IV.     Conclusion

In conclusion, Staley demonstrates three reversible errors committed by the ALJ. The ALJ failed to properly consider Staley's obesity and MCTD at step two and failed to analyze her MCTD against the listing at step three. The RFC is not supported by substantial evidence because the Dr. German's opinion was not fully weighed. Therefore, Staley's brief in support of remand [Filing No. 20] is granted. The Commissioner's decision is remanded pursuant to sentence four of the 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

Date: 12/28/2016

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Andriana M. de la Torre
adriana@dltlawoffice.com

Kathyn Oliver
UNITED STATES ATTORNEY'S OFFICE
Kathryn.oliver@usdoj.gov